IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GALION COMMUNITY HOSPITAL, | ) | CASE NO.:   1:08 CV 1635 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| THE HARTFORD LIFE AND ACCIDENT | ) | MEMORANDUM OPINION |
| INSURANCE COMPANY, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on several Motions. Specifically, currently pending before the Court are a Motion for Summary Judgment filed by Defendants OptumHealth Specialty Benefits, National Benefit Resources, Inc., and DCG Resource Options, LLC (ECF # 67), a Motion for Summary Judgment on Counts Two, Four, Five & Six of Plaintiff's Amended Complaint filed by Defendant Hartford Life and Accident Insurance Company (ECF # 72), and a Motion for Summary Judgment against Defendant Hartford Life and Accident Insurance Company on the First and Second Causes of Action in the Amended Complaint filed by Plaintiff Galion Community Hospital (ECF # 115).

**I. BACKGROUND**

On January 20, 2009, Plaintiff filed an Amended Complaint against the Hartford Life and Accident Insurance Company ("Hartford"), OptumHealth Specialty Benefits ("OptumHealth"), National Benefit Resources, Inc. ("National Benefit"), and DCG Resource Options, LLC ("DCG Resources") (collectively the "NBR Defendants"). (ECF # 17.) In the Amended Complaint, Plaintiff alleges that it entered into a Stop Loss Insurance Agreement (the "Stop Loss Insurance Agreement") with Hartford, which provided for individual stop loss coverage. (*Id.* at ¶ 8.) It is

also alleges that it entered into a Rider for Advance Reimbursement (the "Advance Reimbursement Rider") which formed a part of the Stop Loss Insurance Agreement. (*Id.*) Plaintiff alleges that, although the original agreement was limited to a one-year period, it entered into a series of Amendatory Riders (the "Amendatory Riders") with Hartford, adding the effective dates of January 1, 2005, January 1, 2006, and January 1, 2007. (*Id.* at ¶¶ 8-9.)

Plaintiff claims that, on or before December 31, 2007, Medical Benefits Administrators, Inc., the third-party administrator retained by Plaintiff and approved by Defendant Hartford to process claims for benefits under the Stop Loss Insurance Agreement, submitted more than $600,000.00 in stop loss claims and advance reimbursement claims for payment. (*Id.* at ¶¶ 13, 17.) Plaintiff maintains that such claims were properly and timely submitted in accordance with the terms of the Stop Loss Insurance Agreement. (*Id.* at ¶ 17.) Plaintiff alleges that, subsequent to January 1, 2008, Defendant Hartford and one or more of Defendants acting as an agent of and/or on behalf of Defendant Hartford, improperly denied the stop loss claims and advance reimbursement claims. (*Id.* at ¶ 18.)

Plaintiff attempts to bring six causes of action relating to the denial of its stop loss claims and advance reimbursement claims. In particular, in Counts I and II, Plaintiff attempts to bring claims for breach of the Stop Loss Insurance Agreement against Defendant Hartford. (*Id.* at ¶¶ 21-25, 26-28.) In Count III, Plaintiff alleges that the NBR Defendants, which administered the Stop Loss Insurance Agreement on behalf of Hartford during the last six months of 2007, tortiously interfered with the Stop Loss Insurance Agreement. (*Id.* at ¶¶ 29-32.) In Count IV, Plaintiff attempts to set forth a bad faith claim against all Defendants. (*Id.* at ¶¶ 33-38.) In Count V, Plaintiff alleges conversion of its funds. (*Id.* at ¶¶ 39-42.) Finally, in Count VI,

-2-

Plaintiff alleges civil conspiracy. (*Id.* at ¶¶ 43-46.)

On January 7, 2010, the NBR Defendants,[1] Hartford and Galion Community Hospital filed Motions for Summary Judgment. (ECF # 67, ECF # 72, ECF # 115). The respective Motions have been briefed fully, and they are now ripe for consideration.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1] Counsel for Defendants UnitedHealth Group Incorporated, National Benefit Resources, Inc., and DCG Resource Options, LLC has objected to the Amended Complaint listing OptumHealth Specialty Benefits, A Business Unit of OptumHealth, A Division of UnitedHealth Group, Inc. as a Defendant, asserting that it is not a separate legal entity and not therefore a proper party to this lawsuit. Nevertheless, without waiving the objection, counsel has filed the Motion for Summary on behalf of OptumHealth, National Benefit, and DCG Resources, collectively referred to as the "NBR Defendants." (ECF # 67, n. 2.)

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  It is with this standard in mind that the Motions for Summary Judgment shall be decided.

### III. DISCUSSION

### A. Breach of Contract

This Court first turns to Counts I and II of the Amended Complaint, wherein Plaintiff attempts to bring claims for breach of the Stop Loss Insurance Agreement against Defendant Hartford.  (ECF # 17 at ¶¶ 21-25, 26-28.)  In particular, in Count I of the Amended Complaint, Plaintiff attempts to bring a claim against Hartford for breach of contract based upon its alleged failure to pay stop loss claims.  (*Id.* at ¶¶ 21-25.)  In Count II of the Amended Complaint, Plaintiff attempts to bring a claim against Hartford for breach of contract based upon its alleged failure to pay advance reimbursement claims.  (*Id.* at ¶¶ 26-28.)  Plaintiff has moved for summary judgment with respect to both counts.  (ECF # 115.)  Hartford argues that Count I is now moot and that judgment should be granted in its favor with respect to Count II.  (ECF # 132.)  The Court addresses these claims in turn.

    **1.**       **Count I:  Breach of Contract Based Upon Stop Loss Claims**

In its Motion, Plaintiff claims that Hartford breached the Stop Loss Insurance Agreement by, *inter alia*, denying and failing to pay stop loss claims.  (ECF # 115 at 9-10.)  More specifically, Plaintiff claims that Hartford improperly relied upon a provision referred to as

-6-

the 14-Day Rule in denying stop loss claims. (*Id.* at 10-11.) The 14-Day Rule, which appears in the Advance Reimbursement Rider, provides:

> If the agreement terminates, Your request for advance reimbursement must be received by Us prior to 14 days before the date the agreement terminates.

(NBR Defendants' Ex. A.) Plaintiff argues that the 14-Day Rule does not apply to stop loss claims; rather, it applies only to claims for advance reimbursement. (ECF # 115 at 10.) Hence, to the extent that Hartford relied on the Rule to deny its stop loss claims, Plaintiff claims that it is liable for breach of contract. (*Id.* at 10-11.)

To the contrary, Hartford claims that Plaintiff's Motion fails as to Count I. (ECF # 132.) Hartford asserts that, since the filing of the Amended Complaint, it has paid the full amount at issue including pre-judgment interest. (*Id.* at 1-2.) Accordingly, it is Hartford's position that the claim is moot and, thus, Plaintiff's Motion should be denied. (*Id.* at 1.) Plaintiff does not dispute that the claim has been paid; rather, it maintains that summary judgment should be granted in its favor because Hartford's alleged breach is a predicate for its additional claim of tortious interference with contract. (ECF # 136 at 1-2.)

In order to state a claim for breach of contract in Ohio, Plaintiff must demonstrate, *inter alia*, damages arising from the breach. *See Savedoff v. Access Group, Inc.*, 524 F.3d 754 (6th Cir. 2008) (citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 294 (Ohio Ct. App. 2007)). Given that Hartford has paid the stop loss claims at issue, Plaintiff is unable to establish damages for breach of contract based upon the alleged denial and failure to pay stop loss claims. Accordingly, Plaintiff's Motion for Summary Judgment with respect to this claim is **DENIED**, and Count I of the Complaint is hereby **DISMISSED.**

    **2.**    **Count II:  Breach of Contract Based Upon Advance Reimbursement Claims**

In Count II of the Amended Complaint, Plaintiff alleges that Hartford breached the Stop Loss Insurance Agreement by denying and failing to pay the advance reimbursement claims. (ECF # 17 at ¶¶ 26-28.) In particular, Plaintiff asserts that Hartford breached the Stop Loss Insurance Agreement by denying the claims based upon a purported violation of the 14-Day Rule. (ECF # 115 at 11-12.) According to Plaintiff, the word "terminate" as used in the 14-Day Rule is limited to situations in which the Stop Loss Insurance Agreement terminates prematurely, as opposed to expiring by its own terms. (*Id.*) Plaintiff asserts that the contract expired by its own terms on December 31, 2007 and, thus, the 14-Day Rule is inapplicable. (*Id.*)

According to Hartford, "The crux of the contractual dispute before this Court is whether the [Stop Loss Insurance Agreement] 'terminated' when it ended on December 31, 2007." (ECF # 81 at 4.) Hartford maintains that, because the Stop Loss Insurance Agreement indeed terminated when it ended on December 31, 2007, Plaintiff was obligated to comply with the terms of the 14-Day Rule. (*Id.*) Based upon Plaintiff's alleged failure to do so, Hartford claims that it is entitled to judgment as a matter of law. (*Id.*)

In the contract at issue, the word terminate is not given special meaning in the definition section. Although the Stop Loss Insurance Agreement has a provision covering termination of the contract,[2] that provision addresses instances when the agreement terminates at a time other

---

[2] The termination provision provides:

TERMINATION OF AGREEMENT

You may terminate this agreement for any reason by giving Us 30 days prior written notice.

We may terminate this agreement immediately under the following circumstances:
1.  The Plan ceases to be administered by an Administrator, unless We agree in advance to such change.
2.  You discontinue, modify, or replace The Plan or the Plan Document, unless We agree in advance to such discontinuance, modification or replacement.
3.  You fail to perform any of Your duties under this agreement, and refuse to cure any such

than at the end of an Agreement Year.[3] Indeed, there is no dispute that the Stop Loss Insurance Agreement was to expire by its own terms at the end of 2007, and that no amendatory rider was signed to extend the terms of the contract. Based upon these undisputed facts, the question before the Court is whether the 14-Day Rule applies where, as here, the Stop Loss Insurance Agreement expires by its own terms.

Plaintiff's argument that the 14-Day Rule applies solely to premature terminations of the agreement does not have support in the contract language itself, which attributes no special meaning to the word terminate and does not reference the termination provision in the context of the 14-Day Rule. Further, the provision that Plaintiff argues is instead applicable by its terms applies only to situations in which the contract is renewed:

> To be eligible for advance reimbursement with respect to an Agreement Year, Your request must be received by Us no later than the **10th calendar day following the**

---

failure within 10 days of the date of Our request for You to do so, unless We agree in advance to extend the period for such cure.
4. You fail to pay claims or make funds available to pay claims required by The Plan.
5. You knowingly file false claims.

Any agreement by Us to delay or forgo immediate termination must be authorized in writing by one of Our officers. No agent has authority to provide such agreement.

We may terminate this agreement for the following reasons by giving You 31 days prior written notice:
6. Fewer than 50 persons are covered under the agreement.
7. You fail to furnish any information which We may reasonably require.
8. You fail to perform any of Your other obligations pertaining to this agreement.
9. Participation in The Plan drops below 20% of your employees who are eligible to enroll in The Plan.
10. For any other reason, on the first day of any Agreement Year after the agreement has been in force for 12 months.

(NBR Defendants' Ex. A at 11.)

[3] The Agreement Year is defined in the Stop Loss Insurance Agreement as, "A one year period that begins on the agreement Effective Date or subsequent anniversary of such date and ends 12 consecutive months later." (NBR Defendants' Ex. A at 4.)

> **end of that Agreement Year, provided that the agreement is in force on the date We receive the request.**

(NBR Defendants' Ex. A at 4 (emphasis added).)  Because there is no dispute that the contract ended by its terms on December 31, 2007, the plain language of the contract required that Plaintiff submit the claims for advance reimbursement 14 days before that date.  Here, the evidence is clear that Plaintiff did not submit the claims at issue within that time.  As such, summary judgment is granted in favor of Hartford with respect to this claim.  Based upon the foregoing, Plaintiff's Motion for Summary Judgment with respect to Count II is **DENIED**, and Hartford's Motion for summary judgment with respect to this claim is **GRANTED.**

### B. Tortious Interference

This Court next turns to Count III of the Amended Complaint, wherein Plaintiff attempts to bring a claim for tortious interference with the Stop Loss Insurance Agreement.  (ECF # 17 at ¶¶ 29-32.)  More specifically, Plaintiff alleges that the NBR Defendants had knowledge of the contractual obligations in the Stop Loss Insurance Agreement and have "without privilege or justification to do so, intentionally, improperly, and with actual malice, caused or otherwise induced . . . Hartford to breach the Stop Loss Insurance Agreement."  (*Id*. at ¶¶ 29-31.)

In order to state a claim for tortious interference, Plaintiff must demonstrate (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages.  *See Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, syllabus at ¶ 2 (1995).  As determined in the previous Section of this Opinion and Order, Plaintiff fails to set forth a claim for breach of the Stop Loss Insurance Agreement.  Accordingly, Plaintiff is unable to establish the elements required to state a claim for tortious interference with the Stop Loss

-10-

Insurance Agreement. On this basis, the NBR Defendants' Motion for Summary Judgment is **GRANTED** with respect to Count III of the Amended Complaint.

### C. Bad Faith

In Count IV of the Amended Complaint, Plaintiff attempts to set forth a bad faith claim against all Defendants. (ECF # 17 at ¶¶ 33-38.) Both Hartford and the NBR Defendants have filed a Motion for Summary Judgment with respect to this claim. (ECF # 67, # 72.) It is well settled that an insurer has a duty to act in good faith with respect to the handling and payment of the claims of its insured. *See Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276 (1983). Any breach of the duty of good faith gives rise to a cause of action against the insurer. *See id.* "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, syllabus at ¶ 1 (1994). Stated another way, an insurer is liable for bad faith denial of a claim if it lacked "reasonable justification" for the denial. *See id.*

Here, Plaintiff alleges bad faith in connection with the denial of both the stop loss claims and advance reimbursement claims. (ECF # 17 at ¶ 36.) As to the stop loss claims, it is undisputed that the claims were denied at the outset, and that Hartford has since given payment to Plaintiff with respect to those claims. Further, this Court has been presented with no evidence offering a reasonable justification for the denial of the stop loss claims. On this basis, the Court finds that summary judgment is inappropriate, and that a genuine issue of material fact as to this claim remains for trial. Accordingly, to the extent that Defendants seek summary judgment as to the portion of Count IV that relates to Plaintiff's claim for bad faith denial of its of stop loss

claims, the Motions are **DENIED.**

With respect to the advance reimbursement claims, this Court has already determined that Hartford properly denied the claims. As such, summary judgment is **GRANTED** as to all Defendants on the portion of Count IV that relates to Plaintiff's claim for bad faith denial of the advance reimbursement claims.

### D. Conversion

In Count V of the Amended Complaint, Plaintiff attempts to bring a cause of action for conversion of funds. (ECF # 17 at ¶¶ 39-42.) In particular, Plaintiff alleges that, "[b]y intentionally and wrongfully holding Plaintiff's payment for the stop loss claims and advance reimbursement claims, Defendants deprived and continue to deprive . . . Plaintiff access to his property." (*Id.* at ¶ 40.) Both Hartford and the NBR Defendants have moved for summary judgment with respect to this claim. (ECF # 67, ECF # 72.)

In order to prove a conversion claim in Ohio, Plaintiff must demonstrate (1) its right to the possession of the property at the time of conversion, (2) Defendants' conversion by a wrongful act and (3) damages. *See Academic Imaging, LLC v. Soterion Corp.*, 352 Fed. Appx. 59, 67 (6th Cir. 2009). With respect to such a claim, the Sixth Circuit has stated:

> As in all tort cases that are factually intertwined with a contract, in conversion actions, Ohio Courts have held [ ] such tort claim lies against a contracting party independent of a breach of contract claim so long as the plaintiff alleges a breach of a duty owed separately from obligations created by the contract.

*See id.* (internal quotations and citations omitted). As such, the wrongful act alleged must be wrongful for reasons other than a breach of the contract. *See id.*

In the instant case, the wrongful act alleged is a breach of the Stop Loss Insurance Agreement. Accordingly, Plaintiff fails to allege a breach of duty owed separately from the

-12-

obligations created by the contract. Given that the damages resulting from the alleged conversion would be identical to those resulting from the alleged breach of the Stop Loss Insurance Agreement, the nature of the claim is in contract, not in the tort of conversion. As such, Count V of the Amended Complaint fails as a matter of law, and Defendants' Motions for Summary Judgment are **GRANTED** with respect to this claim.

### E. Civil Conspiracy

In Count VI of the Amended Complaint, Plaintiff attempts to bring a claim for civil conspiracy against Hartford and the NBR Defendants. (ECF # 17 at ¶¶ 43-46.) Plaintiff claims:

> Defendants maliciously joined together and conspired to injure Plaintiff by, among other things, acting in bad faith in improperly terminating or claiming to terminate the Stop Loss Insurance Agreement, refusing to pay Plaintiff for stop loss claims and advance reimbursement claims in accordance with the terms of the Stop Loss Insurance Agreement, and converting Plaintiff's property, all to Plaintiff's detriment.

(*Id.* at ¶ 44.) Plaintiff claims to have suffered damages as a direct and proximate result of Defendants' joint actions. (*Id.* at ¶ 46.)

Ohio law defines civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty*, 72 Ohio St.3d at 419. The elements of this claim include (1) a malicious combination, (2) involving two or more persons, (3) injury to persons or property, and, (4) the existence of an unlawful act independent from the actual conspiracy. *Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 534 (6th Cir. 2000) (citation omitted). A claim for civil conspiracy cannot be based upon a breach of contract. *See All Erection & Crane Rental Corp. v. Acordia Northwest, Inc.*, 162 Fed. Appx. 554, 560 (6th Cir. 2006).

In the instant case, the basis for Plaintiff's claim of civil conspiracy is an alleged breach

-13-

of the Stop Loss Insurance Agreement.  Because a contract claim cannot form the basis of a civil conspiracy claim, Defendants are entitled to summary judgment with respect to this claim.  The Motions for Summary Judgment filed by Hartford and the NBR Defendants are thus **GRANTED** with respect to Count VI of the Amended Complaint.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment on the First and Second Causes of Action in the Amended Complaint is **DENIED** (ECF # 115).  Further, because Plaintiff is unable to establish damages for breach of contract based upon the alleged denial and failure to pay stop loss claims, Count I of the Complaint is hereby **DISMISSED.**

Hartford's Motion for Summary Judgment on Counts Two, Four, Five & Six of Plaintiff's Amended Complaint is **GRANTED IN PART** and **DENIED IN PART** (ECF # 72)**.** More specifically, Hartford's Motion is **GRANTED** as to Counts II, V and VI.  As to Count IV, Hartford's Motion is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** as to Count VI as it applies to advance reimbursement claims, but it is **DENIED** as it applies to stop loss claims.

The NBR Defendants' Motion for is likewise **GRANTED IN PART** and **DENIED IN PART** (ECF # 67).  More specifically, the Motion is **GRANTED** as to Counts V and VI.  As to Count IV, the Motion is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** as to Count VI as it applies to advance reimbursement claims, but it is **DENIED** as it applies to stop loss claims.

In summary, Plaintiff's Motion for Summary Judgment is **DENIED** in its entirety (ECF # 115).  The Motions for Summary Judgment filed by Hartford (ECF # 72) and the NBR

Defendants (ECF # 67) are **GRANTED IN PART** and **DENIED IN PART**.  The sole remaining claim in this case is Plaintiff's claim for bad faith denial of its stop loss claims against Hartford and the NBR Defendants.

      IT IS SO ORDERED.

                                            *s/ Donald C. Nugent*
                                            DONALD C. NUGENT
                                            United States District Judge

DATED: May 7, 2010